IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LISA FORSHEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 3:08-cv-00060 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.    Introduction**

Pending before the court are cross-motions for summary judgment based on the administrative record: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 15) and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 13). The motions have been fully briefed and are ripe for resolution.

Pursuant to 42 U.S.C. § 405(g) and §1383(c)(3), Plaintiff Lisa Forshey brought this action for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied her application for supplemental security income ("SSI") under title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.

**II.    Background**

**A.    Facts**

Plaintiff was born on May 26, 1966, and was 40 years old at the alleged onset date, which means that at the time, she was defined as a "younger individual" pursuant to 20 C.F.R. §416.963. (R. 485). Plaintiff has a tenth grade education. (R. 486). Plaintiff's relevant work

history as a self-employed caregiver/healthcare aide is characterized as being at the medium exertional level and semi-skilled. (R. 26).

Plaintiff alleges disability as of December 3, 2003 due to hepatitis B. (R. 94). On December 12, 2003, Plaintiff was diagnosed with acute hepatitis B, for which she spent a week in the hospital. (R. 181). On December 26, 2003, Plaintiff was seen for a follow-up visit by Dr. Todd. E. Stull, a gastroenterologist. (R. 221). Stull noted that Plaintiff was slowly and gradually feeling better, that her virus seemed to be clearing, and the hepatitis slowly resolving. Id. She was instructed to have her liver profile checked every ten days for the next month, and to return to see him in six weeks. Id. On January 13, 2004, Plaintiff was seen again by Dr. Donald. W. Bulger. She told Dr. Bulger that she was "worse" than before her admission to the hospital. (R. 228). She reported a fever, chills, shaking, and upper right quadrant pain. Id. Bulger noted that Plaintiff was tender in the upper right quadrant, but that her hepatitis B was improving. Id. A CT scan of Plaintiff's abdomen and pelvis taken February 14, 2004 was normal. (R. 242). Plaintiff was seen again on March 8, 2004 and Bulger reported that the hepatitis B was resolving. (R. 250).

On May 28, 2004, Plaintiff had a MRI of her cervical spine which indicated mild disc bulges at C3-4, C5-6, and C6-7 with mild dural effacement at each level. (R. 308). It further indicated mild neural forminal narrowing on the right with sparing on the left at each level respectively. (R. 308). The remainder of the test was normal. (R. 308). On July 7, 2004, Plaintiff had a CT scan of the chest and abdomen which was completely normal. (R. 252). On July 19, 2004, Plaintiff once again went to see Stull and complained of right upper-quadrant pain and mid-chest pain. (R. 259-60). Stull noted Plaintiff had a normalization of her liver function studies. (R. 259). On July 20, 2004, a CT scan of Plaintiff's chest and abdomen was normal. (R. 254, 265).

2

Stull also ordered an esophagogastroduodenoscopy and determined that Plaintiff had esophagitis and gastritis. (R. 254-55, 265). Plaintiff was prescribed Protonix and anti-reflux measures were reinforced. (R. 265). On September 1, 2004, Plaintiff had a small-bowel follow-up and had a normal small-bowel series. (R. 263).

On March 2, 2005, Plaintiff was seen by Dr. Alan J. Kivitz, M.D.; she complained of ongoing musculoskeletal pain and reported that she had been diagnosed with fibromyalgia in the past. (R. 303-04). Dr. Kivitz noted positive tender fibromyalgia points, but no further abnormalities. (R. 304). Plaintiff was diagnosed with fibromyalgia and osteoporosis. (R. 304). Plaintiff also was seen at the Nason Hospital Emergency Room on several occasions. (R. 284-99, 312-21, 322-26). She was seen on these occasions for non-cardiac chest pain, ear pain, sore throat, and flu-like symptoms. *Id.* On July 12, 2005, Plaintiff received a CT scan of the sinuses, which indicated mild inflammation and a small retention cyst. (R. 320). On November 28, 2005, Plaintiff was again seen for chest pain after she attempted suicide by overdosing on Darvocet while under the influence of alcohol. (R. 327-47). After testing, Plaintiff was diagnosed with a limited non-Q wave myocardial infraction. (R. 330-31). On November 29, 2005, a cardiac catheterization was performed on Plaintiff by Dr. Hany F. Shanoudy, M.D. (R. 348-49, 464-65). The catheterization revealed minimal coronary artery disease. *Id.* Plaintiff was also treated for an adjustment order with depressed mood and alcohol abuse at Behavioral Health Services. (R. 351-52). Plaintiff took part in group therapy and was treated with anti-depressant medication until her discharge on December 4, 2005. (R. 351).

On December 27, 2005, Plaintiff was seen by Dr. Joseph W. Gattuso, M.D., a cardiologist. (R. 368-70, 457-59). Plaintiff complained of chest pain, shortness of breath,

3

palpitations, and dizziness/lightheadedness. (R. 368, 457). Plaintiff was assessed with R/O arrhythmia, coronary artery disease, malaise and fatigue, mild mitral valve insufficiency, and R/O hyperthyroidism. (R. 368-9, 457-8). An MRI of Plaintiff's brain was normal. (R. 371-2, 383-4, 448-9). Pulmonary function tests were normal. (R. 373-8, 451-56). Thyroid function testing was negative. (R. 379-80, 461-62). On December 29, 2005, Plaintiff was seen by Dr. Bulger and reported that she was doing "pretty good". (R. 390). However, she indicated that she was still having chest pain. (R. 390). Bulger completed an "Employability Assessment Form" indicating that he believed Plaintiff to be permanently disabled due to her fibromyalgia, mild coronary heart disease, depression, and suicide attempt. (R. 357-59).

On March 3, 2006, Plaintiff was seen again by Bulger and complained of neck, back, left side, and ear pain. (R. 388). Plaintiff was prescribed medication and was referred to physical therapy. (R. 388, 399-403). On March 24, 2006, Plaintiff was seen by Dr. Gattuso. (R. 444). Plaintiff continued to complain of chest pain, shortness of breath, palpitations, and dizziness/lightheadedness. (R. 444). Gattuso assessed R/O arrhythmia, coronary artery disease, malaise and fatigue, mild mitral valve insufficiency, and R/O hyperthyroidism, possible autonomic nervous system disorder with progressive involuntary muscle movement post motor vehicle accident, involuntary movement disorder, and neurologic disorder post-MVA with left-sided pain. (R. 444-46). An MRI of Plaintiff's cervical spine revealed uncovertebral facet hypertrophy causing moderate to severe neural foraminal narrowing, but no disc herniation or significant spinal stenosis. (R. 443). An MRI of Plaintiff's lumbar spine revealed mild facet arthropathy, but well-maintained disc spaces, no herniated discs, and no significant degenerative spinal stenosis. (R. 443).

4

On September 14, 2006, Plaintiff was once again seen by Dr. Gattuso. (R. 439-41). She continued to report chest pain, shortness of breath, palpitations, and dizziness/lightheadedness and also reported related memory loss. (R. 439). Gattuso assessed R/O arrhythmia, coronary artery disease, orthostatic hypotension, malaise and fatigue, mild mitral valve insufficiency, syncope/pre-syncope and R/O hyperthyroidism, involuntary movement disorder, neurologic disorder post-MVA with dizziness/dysequilibrium. (R. 439, 441). On October 24, 2006, Dr. Bulger wrote a letter on Plaintiff's behalf stating that he had been treating Plaintiff since 2003, at which time she was hospitalized for acute hepatitis B and has suffered from "significant aftermaths of her disease" including erosive esophagitis, persistent malaise and myalgias, and depression. He opined that this would significantly "affect her ability to work and should qualify her for supplemental benefits." (R. 467).

On April 11, 2006, Plaintiff's records were reviewed by Juan B. Mari-Mayans, a state-agency physician. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. (R. 430-36). He further opined that Plaintiff could stand/walk six hours in an eight hour work day and could sit for six hours in an eight hour workday. *Id.* On May 3, 2006, Daniel Palmer, Ph.D., a consultative examiner, saw Plaintiff for a clinical psychological disability examination. (R. 407-10). After his examination, Dr. Palmer diagnosed Plaintiff with Major Depressive Disorder, severe. Palmer also completed a form in which he indicated that Plaintiff had moderate restrictions in her ability to understand and remember simple instructions, interact appropriately with the public, interact appropriately with supervisors, and interact appropriately with co-workers. (R. 411). He indicated that Plaintiff had marked limitations in her ability to carry out short simple instructions, and understand and remember detailed instructions. *Id.*

5

Finally, he indicated that Plaintiff had extreme limitations in the ability to carry out detailed instructions, make judgments on simple work-related decisions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. *Id.*

On May 23, 2006, Plaintiff's records were reviewed by Manella Link, M.D., a state agency psychologist. (R. 417-29). Dr. Link opined that Plaintiff's major depressive disorder and r/o alcohol abuse would lead to mild restriction of daily living activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one to two repeated episodes of decompensation, each of extended duration. *Id.* Link opined that Plaintiff was not significantly limited in the following: her ability to remember locations and work-like procedures; her ability to understand and remember very short simple instructions; her ability to carry out very short simple instructions; her ability to sustain an ordinary routine without special supervision; in her ability to make simple work related decisions; her ability to interact appropriately with the general public; in her ability to ask simple questions or ask assistance; her ability to be aware of normal hazards and take appropriate precautions; in her ability to travel to unfamiliar places or use public transportation; and her ability to set realistic goals or make plans independently of others. (R. 413-16). Link further opined that Plaintiff was moderately restricted in her ability to carry out detailed instructions; in her ability to perform activities within a schedule; in her ability to maintain regular attendance, and be punctual within customary tolerances; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in her ability to accept instructions and

respond appropriately to criticism from supervisors; and in her ability to respond appropriately to changes in the work setting. *Id.*

## B. Procedural History

Plaintiff's previous application for benefits was denied on November 3, 2004 (R. 34-8). Plaintiff protectively filed the instant application for SSI on January 13, 2006, alleging disability since December 3, 2003. (R. 80). The claim was denied. (R. 29, 39-43). This case was then randomly selected by the Commissioner to test modifications to the disability determination process, so the reconsideration step of the administrative review process was eliminated and Plaintiff was given the opportunity to seek review of the unfavorable initial determination by an Administrative Law Judge without first seeking reconsideration. (R. 41). At Plaintiff's request, an administrative hearing was held on November 3, 2006 before Administrative Law Judge Robert C. Deitch ("ALJ"). (R. 474-511). Plaintiff testified at the hearing and was not represented by counsel. (R. 467-504). Mark Heckman, a vocational expert, also testified at the hearing. (R. 504-11).

On November 22, 2006, the ALJ rendered a decision that was unfavorable to Plaintiff under the five-step sequential analysis used to determine disability. (R. 16-27). The ALJ found the following:

> 1. The claimant has not engaged in substantial gainful activity since filing for supplemental security income on January 13, 2006 (20 C.F.R. § 416.920 (b)).
>
> 2. The claimant has the following severe impairments: fibromyalgia, hepatitis B virus, major depressive disorder, and a history of alcohol abuse (20 C.F.R. § 416.920 (c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of any

7

section contained in Listings 1.00, 5.00 or 12.00 or any other listed impairment in 20 CFR 404, Subpart P, Appendix 1, Regulation No. 4 (20 CFR §416.920 (d)).

4. Upon careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform simple, routine and repetitive tasks at the light exertional level but is limited to no more than occasional interaction with coworkers and must avoid interaction with the public.

5. The claimant is unable to perform any past relevant work (20 CFR §416.965).

6. The claimant was born on May 26, 1966 and was 39 years old when she filed her application for supplemental security income and is currently 40 years old, a "younger individual" as defined in the Regulations (20 CFR. § 416.963).

7. The claimant has a tenth grade education, a "limited" education, but is literate and able to communicate in English (Exhibits 1E, 6E, 9E and 28F; Testimony; 20 CFR § 416.963).

8. The claimant has semiskilled work experience but has not acquired any work skills transferable to work with the above-stated residual functional capacity. (20 CFR § 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, jobs exist in significant number in the local and national economies the claimant can perform (20 C.F.R. §§ 416.960 (c) and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act, from January 13, 2006 through the date of this decision (20 CFR § 416.920 (g)).

(R. 18-27).

### III. Legal Analysis

A. <u>Standard of Review</u>

8

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v.*

9

> *Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy...." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

## B. Discussion

Plaintiff makes several arguments claiming error on the part of the ALJ. First, Plaintiff claims that the ALJ erred in his conclusion that the Plaintiff did not meet a listing in Appendix I, Subpart P, Regulation 4; specifically sections 1.00 Musculoskeletal System, 4.00 Cardiovascular System, 5.00 Digestive System, 12.00 Mental Disorders, and 14.09 Inflammatory Arthritis. Second, Plaintiff claims that the ALJ erred in determining that the claimant can perform work at the light exertional level. Third, the Plaintiff claims that the ALJ erred in finding the claimant's impairments of heart disease, osteoporosis, tremors, irritable bowel syndrome and sinus problems were non-severe. Finally, Plaintiff claims that the ALJ erred in failing to ensure that the

10

record was complete since Plaintiff was not represented by counsel and in accepting Plaintiff's waiver of counsel as being knowing, intelligent and voluntary.

The Commissioner contends that the ALJ properly assessed Plaintiff's impairments under the Listings, properly assessed Plaintiff's residual functional capacity, correctly determined Plaintiff's severe and non-severe impairments within the meaning of the Act, and properly accepted Plaintiff's waiver of counsel and ensured that the record was complete.

1. *Waiver of Counsel and Completion of Record*

While there is no constitutional right to counsel at a social security disability hearing, a claimant does have a statutory and regulatory right to counsel at such a hearing. *Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985); 42 U.S.C. § 406; 20 C.F.R. §§ 404.1700-404.1707. The claimant must be provided with notice of his right to counsel and can waive this right as long as such waiver is knowing and intelligent. *See Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). A waiver in and of itself is not a sufficient justification for remand. Rather, remand is proper where the lack of counsel prejudices a claimant or where the lack of counsel leads to an administrative proceeding marked by unfairness. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).

Plaintiff was given information about her right to counsel and knowingly and intelligently waived that right. Plaintiff was mailed a letter by the Agency which advised her of her right to representation. (R. 46-7). The letter and the accompanying leaflet, "Your Right to Representation", deal with obtaining counsel, the possibility of free counsel, and representation pursuant to a contingent fee agreement. (R. 46-51). At the hearing, Plaintiff testified that she had received the information pertaining to her right to counsel, had read that information, understood

11

it, and had consulted an attorney. (R. 476-78). She then proceeded with the hearing without counsel after the ALJ had ascertained that she understood her rights and had asked her if she wanted to proceed without a representative. *Id.*

Even though Plaintiff makes a further assertion that the ALJ prejudiced Plaintiff by failing to adequately develop the record, she provides no argument as to how the ALJ could have further developed the record or what information she alleges is missing from the record due to that lack of development. Plaintiff correctly argues that the ALJ had a heightened duty to develop the medical evidence of record due to her lack of representation at the hearing. *Livingston*, 614 F.3d at 345. However, the ALJ conducted a forty-minute hearing in which he obtained Plaintiff's testimony and that of a vocational expert. The ALJ also obtained and reviewed Plaintiff's medical records. As Plaintiff can point to no specific issues with this record and the Court finds none, Plaintiff's case will not be remanded based upon the claims of inappropriate waiver of counsel and faulty development of the record.

2. *Requirements of the Listings and Non-severe Impairments*

Plaintiff's second argument deals with the ALJ's assessment of Plaintiff's impairments under the listings. Specifically, Plaintiff argues that she meets sections 1.00 Musculoskeletal System, 4.00 Cardiovascular System, 5.00 Digestive System, 12.00 Mental Disorders, and 14.09 Inflammatory Arthritis. Plaintiff also argues that the ALJ erred in finding that Plaintiff's impairments of heart disease, osteoporosis, tremors, irritable bowel syndrome, and sinus problems were non-severe. In support of this second argument, Plaintiff simply states "that this issue is similar to the issue argued at Issue I [Listing Requirements]. As it relates to the ALJ failing to give appropriate (*sic*) weight to the opinions of treating physician. Claimant submits that the

12

record is replete with objective medical evidence showing more than a de minimis impact on the claimant from these impairments."

The Supreme Court explained: "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff does not make specific arguments indicating that her ailments meet all of the criteria for the above-mentioned listings. Instead, Plaintiff merely claims that Dr. Bulger's letter of October 24, 2006 supports findings that Plaintiff meets all of the criteria for the listings. However, Dr. Bulger's letter does not speak to Plaintiff meeting the specific criteria of the listings; instead, it merely speaks to Bulger's opinion that Plaintiff is entitled to supplemental benefits. It is Plaintiff's burden to show that she meets the criteria of the Listings. *Brown v. Bowen*, 845 F.2d 1211, 1213-14 (3d Cir. 1987) (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). In the instant case, Plaintiff did not point to specific medical evidence to contradict the findings of the ALJ with regard to listings 1.00, 5.00, and 12.00, nor has she provided evidence to support her further assertions that she meets Listings 4.00 and 14.09.

Plaintiff also relies on Dr. Bulger's letter and disability assessment in support of her argument that the ALJ erred in not finding her heart disease, osteoporosis, tremors, irritable bowel syndrome, and sinus problems to be severe. In his disability assessment, under diagnosis, Bulger stated that Plaintiff had fibromyalgia, mild coronary artery disease, depression, and a suicide attempt. (R. 358). In his letter of October 24, 2006, he stated the Plaintiff suffered from "erosive esophagitis, persistent malaise and myalgias, and depression." In his assessments that Plaintiff was "permanently disabled" and entitled to supplemental benefits, Bulger did not mention

13

Plaintiff's osteoporosis, tremors, irritable bowel syndrome, or sinus problems. Therefore, Plaintiff cannot rely on his assessments in support of her argument that these impairments were, in fact, severe. While Dr. Bulger did report that Plaintiff had mild coronary artery disease when he assessed her as being permanently disabled, he stated that the impairment was "mild."

To the extent that Plaintiff challenges the ALJ's weighing of Dr. Bulger's opinion that Plaintiff was permanently disabled, the evidence of record must be examined. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d. Cir. 1999), quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, for controlling weight to be given to the opinion of a treating physician that opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence." 20 C.F.R. §§404.1527 (d)(2), 416.972 (d)(2). The opinions of a treating physician may only be rejected on the basis of contradictory medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d. Cir. 1988). There are several factors that the ALJ may consider when determining what weight to give the opinion of the treating physician. 20 C.F.R. §404.1527, 416.927 (d)(2). Such factors include: the examining relationship, treating relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §404.1527 (d), 416.927 (d).

In his opinion, the ALJ assessed that the totality of Dr. Bulger's opinions were entitled to "minimal weight." (R. 25). The objective medical evidence supports the ALJ's assessment. On December 26, 2003, Dr. Stull indicated that Plaintiff's hepatitis was resolving. (R. 221). On

14

February 14, 2004, Plaintiff had a CT scan which was completely normal. (R. 242). On July 7, 2004, Plaintiff had a second CT scan that was completely normal. (R. 252). On July 19, 2004, Stull noted a normalization of Plaintiff's liver function studies. (R. 259). On July 20, 2004, Plaintiff had a third CT scan that was completely normal. (R. 254, 265). While Plaintiff had an esophagogastroduodenoscopy on July 20, 2004 that indicated esophagitis and gastritis, this was treated by prescribing Protonix and reinforcing anti-reflux measures. (R. 265). Plaintiff had a normal small bowel series on follow-up. (R. 263).

On March 2, 2005, Plaintiff was seen by Dr. Alan Kivitz who noted that Plaintiff had tender fibromyalgia points, but no further abnormalities. (R. 304). On July 12, 2005, a CT scan of Plaintiff's sinuses indicated only mild inflammation and a small retention cyst. (R. 320). On November 28, 2005, Plaintiff attempted suicide by overdosing on Darvocet while under the influence of alcohol. (R. 327-347). While she received treatment for her adjustment disorder, depressed mood, and alcohol abuse in the hospital, she sought no further psychological treatment after her release. (R. 351-52). Additionally, it should be noted that Dr. Bulger was not a specialist in the field of psychology and there are no records from a psychologist or psychiatrist relating to Plaintiff. While in the hospital, the Plaintiff was further diagnosed with a limited non-Q wave myocardial infraction, but a catheterization indicated only minimal coronary artery disease. (R. 330-31, 348-49, 464-65). On December 27, 2005, Plaintiff had a normal MRI of the brain, normal pulmonary function tests, and negative thyroid function testing. (R. 371-2, 373-78, 379-80, 383-4, 448-9, 451-56, 461-62). An MRI in March 2006 of Plaintiff's cervical spine revealed uncontrovertebral facet hypertrophy causing moderate to several neural foraminal narrowing, but no disc herniation or significant spinal stenosis.(R. 443). An MRI of Plaintiff's lumbar spine

15

revealed mild face arthropathy, but well maintained disc spaces, no herniated disc, and no significant degenerative spinal stenosis. (R. 443). Notably, however, in his diagnosis resulting in a finding of "permanently disabled" and in his letter stating that Plaintiff was qualified for supplemental benefits, Dr. Bulger never mentioned any problems with Plaintiff's back. Therefore, the Court finds no reason to disturb the weight assigned to Dr. Bulger's opinions by the ALJ. Although Plaintiff had medical issues, there was sufficient evidence of record for the ALJ to determine her medical issues did not rise to the level of disability that the Act requires.

3. *Residual Functional Capacity and Hypothetical Question to the VE*

Plaintiff argues that she could not perform work at the light exertional level and that the ALJ did not pose a hypothetical question that included all of Plaintiff's well-supported limitations.

"'Residual Functional Capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999); 20 C.F.R. §§ 404.1545 (a), 416.945 (a). An ALJ making a residual functional capacity determination must "consider all evidence before him [.]" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir.2000). "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *see* 20 C.F.R. § 404.1545(a). In construing the evidence, the "ALJ may weigh the credibility of the evidence, [however,] he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; see *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981) (The ALJ's

16

determination of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests.")

In the instant determination of Plaintiff's residual functional capacity, the ALJ relied on the record evidence and his assessment of Plaintiff's credibility. As stated above, the ALJ determined that Plaintiff was capable of performing light work. The light work category is described in the regulations as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm and leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R.§ 404.1567. Plaintiff claims that the ALJ failed to consider the claimant's back issues, fibromyalgia, and arthritis.

As was discussed above, none of Plaintiff's treating physicians, nor any consulting physicians or evaluators opined that Plaintiff had any serious limitation stemming from her back issues and arthritis. Therefore, there is no evidence that Plaintiff had well-supported limitations stemming from those diagnoses. As to Plaintiff's fibromyalgia, the only physician that suggested limitation on behalf of Plaintiff due to this ailment was Dr. Bulger. He merely stated that Plaintiff was "permanently disabled"and entitled to supplemental benefits. He did not provide opinions as to specific limitations, and as discussed above, the Court determined that the ALJ appropriately

17

gave Dr. Bulger's opinions only "minimal weight." Therefore, the Court cannot find that the ALJ omitted any limitations in considering Plaintiff's residual functional capacity.

Finally, Plaintiff similarly contends that the ALJ's hypothetical question to the vocational expert did not fairly set forth all of Plaintiff's limitations that were supported by the record. The "[t]estimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "The ALJ will normally ask the expert whether, given certain assumptions about a claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Id.* Although "the ALJ may proffer a variety of assumptions to the expert, the expert's testimony concerning alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Id.*; *see also Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). If a hypothetical question does not reflect all of a claimant's impairments that are supported by the record, "the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *see also Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004); *Burns*, 312 F.3d at 123.

In this case, the ALJ posed the following hypothetical to the vocational expert:

> If you consider a hypothetical individual with the Claimant's age, education, and work experience whose work capability is no more than light work, who's further limited to no more than simple, repetitive routine tasks, no interaction with the public, no more than occasional interaction with co-workers, and by occasional I mean less than one-third of the time cumulatively during an eight

18

> hour work period. It's a maximum of light. No more than simple, routine repetitive tasks, no public interaction, no more than occasional co-worker interaction. Are you able to suggest un-skilled, entry competitive occupations at the light and sedentary levels only and if so examples?

(R. 506). In response to this hypothetical, the expert opined that Plaintiff could perform a number of positions present in the national economy. (R. 506). Plaintiff makes no argument with regard to specific limitations that were omitted. Based on the findings above, the Court does not find the ALJ's hypothetical question to be deficient.

## IV.    Conclusion

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, the Court finds that the ALJ's opinion was supported by substantial evidence. Therefore, the decision of the ALJ is affirmed.

An appropriate Order follows.

AND NOW, this 3rd day of March, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. Defendant's Motion for Summary Judgment (Document No. 15) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (Document No. 13) is **DENIED.**

3. The Clerk will docket this case as closed.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT COURT JUDGE**